[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
In this action for unpaid rent, and other expenses allegedly not paid in breach of a commercial lease agreement, the plaintiff claims unpaid rent and interest in the amount of $51,349.13; attorney's fees in the amount of $4087.50; $110.09 for pro rata share of water expenses; $100.75 CT Page 891 for pro rata share of sewer charges; and $500.00 for damage to the premises.
The defendant filed a counterclaim on February 1, 2000 but subsequently withdrew that counterclaim on December 19, 2000.
The defendant claims as special defenses to the complaint, the plaintiff's failure to maintain and repair the surface of the parking lot, the posting of a tax sale sign and the plaintiff's failure to remove a fence and unsightly vegetation which resulted in constructive eviction of the defendant, thereby terminating the Defendant's obligations under the lease.
Upon considering the testimony and documentary evidence as framed by the pleadings and presented over two days of trial, the court makes the following findings:
1. The plaintiff is the owner of the property at 1954 Baldwin St., Waterbury, Connecticut and he rents for commercial purposes and retail. He had operated a furniture retail store himself on the property. There are four other tenants on the property: B and H Oil has been a tenant for 6-7 years; Golden Bakery has been a tenant for 3 years; Teamsters Vision Center has been a tenant for a long time; and Sweet Life Foods has been a tenant for 15-20 years.
2. The plaintiff leased the property to the defendant effective February 1, 1998 after being approached by the defendant. The defendant agreed to continue to sell the existing inventory under the plaintiff's name.
3. The term of the lease was for a period of two years at $2500.00 per month to terminate January 31, 2000 with an option to extend the lease to years 3, 4, and 5.
4. The defendant paid a security deposit to the plaintiff in the amount of $5000.00.
5. The defendant paid rent promptly through June 30, 1998, vacated the premises at that time, and paid no rent thereafter.
6. The plaintiff has made efforts to re-rent the property but has been unsuccessful.
7. While the plaintiff was admittedly delinquent on taxes at some point, he was not at the time that a tax foreclosure sign was put up in error; the sign was taken down after one day. CT Page 892
8. The defendant claims that verbal representations regarding improvement of the property were made by the plaintiff after the lease was signed but that those representations were not put in writing. He admitted that relying on verbal representations was "not too smart." He also admitted that the fence removal and landscaping was very important to him and it was "my mistake" for not putting it in lease. He testified that he "relied on [the plaintiff's] good will and understanding."
9. The pavement of the parking lot had some broken and loose asphalt which was in existence at the time of the signing of the lease, was under snow at that time and not visible to the eye until the snow melted. It came to the plaintiff's attention and was repaired some time during the summer of 1998.
10. Mr. McClenning, an employee, with many years of experience in retail, testified that the condition of the building had no impact on the defendant's business, that the defendant needed a more conspicuous sign and better advertising. The court finds Mr. McClenning's testimony to be credible.
11. Although there was conflicting testimony on whether the tenant surrendered and whether there was an acceptance of the surrender, the court finds based on the overall evidence and its view of the credibility of the witnesses, that there was no notification, verbal or written, by the defendant of an intent to vacate the premises and terminate the lease. A landlord may treat the tenant as still in occupancy, not attempt to mitigate and hold tenant liable for remainder of the lease. SagamoreCorp. v. Willicut, 120 Conn. 315 (1935). In any event, the court finds that the plaintiff did attempt to mitigate the damages for unpaid rent by seeking other tenants but was unsuccessful.
 CONCLUSION Claim for Unpaid Rent Plus Interest
The lease provides that "the tenant has examined the demised premises and accepts them in their present condition . . . without any representations on the part of the landlord or its agents as to the present or future condition of the premises." The court finds the defendant's special defense that the premises were untenable as a result of the unremedied various conditions of the property to be without merit. The defendant and his witnesses were not credible on this issue. Based on a review of the evidence, judgment may enter in favor of the plaintiff on the complaint in the amount of $47,500.00 in unpaid rent plus the statutory interest reduced by the $5,000.00 security deposit paid by CT Page 893 the defendant to the plaintiff.
 Claim for Pro Rata Water and Sewer
With respect to the plaintiff's claims for pro rata water charges and pro rata sewer charges, the court finds that the plaintiff's testimony that he "doesn't know if that is owed" does not support these claims. Judgment on this claim may enter in favor of the defendant.
 Awning Damage
With respect to the plaintiff's claim for the awning damage, the testimony of the defendant indicated that the cost to fix the damage was "a couple of hundred dollars." Judgment may enter in favor of the plaintiff on this claim in the amount of $200.00.
 Attorney's Fees
The lease provides that [t]he Tenant agrees to pay, as additional rent, all attorney's fees and other expenses incurred by the landlord in enforcing any of the obligations under this lease." Attorney's fees in the amount of $3500.00 are awarded to the plaintiff.
Prestley, J.